UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DARREN TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>MARTHAKIS,<br><br>Defendant. | CAUSE NO. 3:25-CV-196-CCB-SJF |

**OPINION AND ORDER**

Darren Taylor, a prisoner without a lawyer, is proceeding in this case against Correctional Officer Maria Marthakis "in her individual capacity for compensatory and punitive damages for forcing him to walk on icy stairs while handcuffed behind his back to obtain insulin at the medical unit at the Indiana State Prison on January 15, 2024, in violation of the Eighth Amendment[.]" ECF 8 at 3. Officer Marthakis filed a motion for summary judgment, arguing Taylor did not exhaust his available administrative remedies before filing this lawsuit. ECF 18. Taylor filed a response, and Officer Marthakis filed a reply. ECF 24, 25, 26, 27. Officer Marthakis then filed a motion for sanctions against Taylor, arguing he falsified one of the exhibits he provided with his summary judgment response. ECF 28. The motions are now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the

evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *see also Chambers v. Sood*, 956 F.3d 979, 984-85 (7th Cir. 2020). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id*. But inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is

not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The parties provide evidence showing the following facts: During all relevant times, an Offender Grievance Process was in place at Indiana State Prison which required Taylor to complete three steps before filing this lawsuit: (1) a formal grievance; (2) a Level I appeal to the warden; and (3) a Level II appeal to the Department Grievance Manager. ECF 18-1 at 2; ECF 18-2 at 3. Regarding the first step, "An offender wishing to submit a grievance shall submit a completed State Form 45471, 'Offender Grievance,' no later than ten (10) business days from the date of the incident giving rise to the complaint or concern to the Offender Grievance Specialist." ECF 18-2 at 9. Once an inmate submits a grievance "[t]he Offender Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted form within ten (10) business days of receipt." *Id*. Each completed grievance must meet the following standards:

1. Each part of the form shall be completed;
2. It shall be written legibly;
3. It shall avoid the use of legal terminology;
4. It shall relate to only one event or issue;

> 5. It shall be signed, dated, and submitted by an offender on their own behalf, although it can be written by another offender or staff member if the offender is unable to do so due to a physical impairment, language impairment, or other obstacle;
> 6. It shall explain how the situation or incident affects the offender; and,
> 7. The offender shall suggest appropriate relief or remedy.

*Id.* at 9-10. "The Offender Grievance Specialist may reject the grievance form and return it to the offender unfiled if any of [those standards] are not met." *Id.* at 10. However, "[n]o grievance shall be rejected because an offender seeks an improper or unavailable remedy, except that a grievance shall be rejected if the offender seeks a remedy to a matter that is inappropriate to the offender grievance process." *Id.* at 7.

Taylor submitted three grievances relevant to his claim against Officer Marthakis. First, on January 19, 2024, Taylor submitted a grievance complaining a correctional officer caused him to fall down the stairs on January 15 ("January 19 grievance"). ECF 18-3. Nearly three months later, on April 3, 2024, the grievance office issued a response to Taylor's January 19 grievance stating: "Your grievance was received on January 23, 2024. You were not given a timely response and according to the Grievance Policy AP 00-02-301, the grievance and its appeals are outside of time frame. If this is a current grievance, please resubmit a new grievance for a timely response and remedy." ECF 18-4.

As instructed, Taylor submitted a new grievance on April 10, 2024, again complaining a correctional officer caused him to fall down the stairs on January 15 ("April 10 grievance"). ECF 18-5. For relief, Taylor requested that correctional officers be trained in how to properly transport inmates during icy conditions. *Id.* On May 21,

2024, the grievance office rejected and returned Taylor's April 10 grievance, stating: "Your grievance is being returned as you may not grieve for staff to be retrained." ECF 18-6. On September 17, 2024, Taylor submitted a third grievance, again complaining a correctional officer caused him to fall on January 15 and requesting as relief that he be allowed to exhaust his remedies and "not be given the run around" ("September 17 grievance"). ECF 18-7 at 3. The grievance office rejected and returned Taylor's September 17 grievance because (1) it was untimely and (2) it related to an issue that already had been addressed in his earlier grievances. *Id.* at 2. Because neither party disputes these facts, the court accepts them as undisputed.

Here, the undisputed facts show the grievance office made Taylor's administrative remedies unavailable by improperly rejecting his grievances. *See Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016) (holding that where the grievance office improperly rejected a grievance, "no further administrative remedies were available"); *Davis v. Mason*, 881 F.3d 982, 986 (7th Cir. 2018) (holding that administrative remedies are unavailable where the Grievance Specialist prevents an inmate from proceeding by improperly rejecting grievances based on requirements not found in the grievance policy). Specifically, the grievance office rejected and returned Taylor's January 19 grievance not due to any deficiencies with the grievance, but simply because the grievance office itself was unable to issue a timely response to the grievance. ECF 18-4. Taylor then submitted his new April 10 grievance, which the grievance office rejected because he requested as relief that staff be properly trained. ECF 18-6. As discussed, the Offender Grievance Process provides that "No grievance shall be rejected because an

offender seeks an improper or unavailable remedy, except that a grievance shall be rejected if the offender seeks a remedy to a matter that is inappropriate to the offender grievance process." ECF 18-2 at 7. Because Taylor's April 10 grievance sought a remedy for a matter that was appropriate to the grievance process, the fact that he requested an improper or unavailable remedy was not a valid basis for rejecting the grievance. *See id.* Taylor then submitted his September 17 grievance, which was rejected in part because it raised the same issue he had raised in his January 19 and April 10 grievances. But because the grievance office rejected and returned Taylor's January 19 and April 10 grievances and did not address those grievances on their merits, the fact that Taylor raised the same issue in his September 17 grievance was not a valid basis for rejecting that grievance.

Accordingly, the undisputed facts show the grievance office made Taylor's administrative remedies unavailable by improperly rejecting his grievances for invalid reasons. Officer Marthakis has therefore not met her burden to show Taylor had available administrative remedies which he did not exhaust before he filed this lawsuit.

Officer Marthakis raises several other matters that must be addressed. First, in her summary judgment response, she argues Taylor's grievances were insufficient to exhaust his claim in this lawsuit because they did not mention Officer Marthakis by name or state that she forced him to walk on icy stairs. ECF 19 at 9.

The purpose of a grievance is to alert prison officials to a problem so that action can be taken to remedy the problem. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). An inmate's grievance is therefore sufficient to exhaust a claim if it raises the same

claim as the lawsuit and provides enough information to indicate that the defendant is the target. *King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023).

Taylor was not required to specifically name Officer Marthakis in his grievance to exhaust his claim against her. *See Jackson v. Esser*, 105 F.4th 948, 959-60 (7th Cir. 2024) (holding that "the district court erred by effectively requiring [the plaintiff] to specifically name every potential defendant in his grievances," as "our notice-based exhaustion standard has no such requirement."). Nevertheless, "prisoners must provide 'some identifying information about the accused individuals.'" *Id.* at 960. "In other words, a grievance must contain enough information about who caused the grieved of problem so that a prison can properly 'investigate and resolve grievances.'" *Id.* "Indeed, we have found exhaustion as to defendants not named in a grievance when, from the content of the grievance and the nature of the complained of conduct the prison was clearly on notice that those unnamed defendants were involved." *Id.*

Here, Taylor's allegations in his grievances – that a correctional officer caused him to fall on the icy stairs on January 15, 2024 – were clearly sufficient to exhaust his claim in this lawsuit that Officer Marthakis violated his Eighth Amendment rights by forcing him to walk on icy stairs while handcuffed behind his back on January 15. Taylor was not required to specifically name Officer Marthakis in his grievances, and he provided sufficient information by which the prison could have investigated and resolved the grievances. Therefore, Taylor can rely on his January 19, April 10, and September 17 grievances to exhaust his claim against Officer Marthakis in this lawsuit.

Second, Officer Marthakis argues in her reply that Taylor should have appealed the lack of response to his grievances. ECF 26 at 2-4. But because the grievance office rejected and returned each of Taylor's grievances, rather than accepting and denying the grievances on their merits, the Offender Grievance Process did not allow him to appeal those grievances. *See Davis*, 881 F.3d at 986 ("Inmates may appeal the denial of a grievance . . . [b]ut the policy does not provide for an appeal from a *refusal to process* a grievance"); *Hill*, 817 F.3d at 1040 (explaining that the Indiana grievance policy does not provide for appeals of unprocessed grievances).

Third, Officer Marthakis argues in her reply that Taylor did not comply with the Offender Grievance Process' "notice requirement." ECF 26 at 2-3. The "notice requirement" provides that: "If an offender does not receive either a receipt or a rejected form from the Offender Grievance Specialist within ten (10) business days of submitting it, the offender shall notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days." ECF 18-2 at 9. But the "notice requirement" is not applicable where, as here, Taylor did receive responses to his grievances from the grievance office.

Lastly, Officer Marthakis moves for sanctions against Taylor because she claims he submitted fabricated evidence with his summary judgment response. Specifically, with her summary judgment motion, Officer Marthakis provided a copy of the notice that was sent to Taylor informing him that his January 18 grievance was being returned as unfiled. ECF 18-4. With his summary judgment response, Taylor provides a different

version of this form, which he claims he received in his mailbox. ECF 24-2 at 4. Officer Marthakis argues that the fact this form contains no identifying information related to Taylor or his grievances proves he did not receive the form in his mailbox, as the grievance office never sends out blank forms to inmates. ECF 28 at 5-6; ECF 28-1 at 1-2. Taylor responds that he did in fact receive this blank form in his mailbox, though he admits there is no way for him to prove this fact. ECF 29 at 1-2.

Here, whether Taylor received the form provided by Officer Marthakis (ECF 18-4) or the form he provides (ECF 24-2 at 4) is not material to the exhaustion analysis. Regardless of which form Taylor received, the undisputed facts show the grievance office made his administrative remedies unavailable by improperly rejecting his grievances. If Taylor did in fact fabricate this evidence (ECF 24-2 at 4), it would be appropriate to disregard this evidence and accept as true that Taylor received the form provided by Officer Marthakis (ECF 18-4). Here, because this dispute is not material and has no impact on the outcome of this case, the court declines to reach this issue.

For these reasons, Officer Marthakis' motion for summary judgment (ECF 18) and motion for sanctions (ECF 28) are **DENIED**.

SO ORDERED on August 31, 2026

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT